UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:13-CR-12-KKC-HAI |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| REVA S. HICKS, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral (D.E. 40), considers reported violations of supervised release conditions by Defendant Reva Hicks. District Judge Thapar entered a judgment against Defendant on January 27, 2014, for conspiracy to distribute oxycodone. D.E. 33. She was sentenced to sixty-five months of imprisonment and seven years of supervised release, with the condition that she may petition the Court for early termination after four years if there were no violations. *Id.* at 2-3. On July 17, 2015, Defendant's sentence was reduced to fifty-two months pursuant to 18 U.S.C. § 3582(c)(2). D.E. 37. Defendant began her term of supervised release on February 24, 2017.

On March 20, 2017, United States Probation Officer ("USPO") Tyler submitted a Form 12A, Report on Offender Under Supervision, after Defendant used Xanex without a prescription. D.E. 38. Specifically, Defendant reported to the USPO on March 7, 2017, and provided a urine specimen for routine drug testing. *Id*. Before providing the specimen, she advised that she was not currently taking any prescribed controlled substances. *Id*. Defendant's sample tested positive for the presence of benzodiazepines, and she advised that she had recently acquired 3

pills from an old prescription for Xanax when she stopped by the Dismas halfway house to collect her belongings. *Id*. The sample was sent to Alere Toxicology Services and returned negative results for the presence of benzodiazepines. *Id.* On March 7, 2017, Supervisory USPO Kincer contacted the director of Dismas house, who reported that Defendant attempted to collect her personal belongings, but they had already been disposed of by Dismas. *Id.* Defendant reported to the USPO on March 16, 2017, and provided a urine specimen that tested negative for the presence of controlled substances. *Id.* Defendant was advised of SUSPO's conversation with the Dismas house director, and subsequently admitted she was being untruthful about her old Xanax prescription and that she had obtained Xanax from an associate. *Id.* She signed a written admission report stating that she used Xanax on March 1, 2017. *Id.* USPO Tyler requested that no action be taken by the Court, and recommended that Defendant be referred to outpatient treatment. *Id*. District Judge Thapar approved the requested action on March 20, 2017. *Id.*

### I.

On June 28, 2017, the USPO issued the Supervised Release Revocation Report ("the Report") that initiated this revocation. The Report charges two violations.

In Violation #1, the Report charges a violation of the condition requiring that Defendant "not purchase, possess, use, distribute, or administer any controlled substance . . , except as prescribed by a physician." Specifically, the Report alleges that, on June 22, 2017, USPO Jones contacted Defendant at a substance and mental health treatment session. Defendant provided an unobserved urine specimen for routine drug testing that tested positive via instant testing device for oxycodone and methamphetamine. She denied any use of controlled substances, and the specimen was forwarded to Alere Toxicology Services for confirmation. On June 25, 2017,

2

Alere returned a negative result for oxycodone, and on June 26, 2017, returned a positive result for methamphetamine. This is a Grade C violation.

In Violation #2, the Report charges a violation of the condition requiring that Defendant "not commit another federal, state, or local crime." Specifically, the Report alleges that methamphetamine is a Schedule II Controlled Substance, and "[d]ue to the Defendant's prior conviction for a controlled substance offense, and with the Sixth Circuit Court of Appeals' ruling that use is the equivalent of possession, simple possession of methamphetamine constitutes conduct that would result in a violation of 21 U.S.C. § 844(a), a Class E Felony." This is a Grade B violation.

## II.

On July 12, 2017, the Court conducted an initial appearance pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure. D.E. 44. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. *Id.* At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id.* The Court found that Defendant failed to meet the heavy § 3143(a) defense burden and remanded her to the custody of the United States Marshal. *Id.*

At the final hearing on June 20, 2017, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 46. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #1 and #2. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report. *Id.* The United States thus established both violations under the standard of section 3583(e). *Id.*

The parties did not agree as to the sentence to be imposed. The government argued for revocation with eleven months of imprisonment and continuation of the current term of

3

supervised release set to expire on February 23, 2024. Defendant argued for inpatient treatment in lieu of incarceration. Specifically, she asked the Court to continue the sentencing portion of the final hearing to see if she could obtain a bed for treatment in an inpatient drug treatment facility, to be followed by a period of home incarceration. Alternatively, Defendant argued for revocation with eight months of imprisonment with the condition that she can petition for early release for inpatient drug treatment if she obtains placement in an approved facility, followed by a period of home incarceration.

### III.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying judgment in the District. Additionally, the Court has considered all of the section 3553 factors imported in the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pled guilty to conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846, which is a Class C felony. *See* 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 3559(a)(3). For a Class C felony, the maximum revocation sentence provided under section 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).

Under § 7B1.1, Defendant's admitted conduct in Violation #1 would qualify as a Grade C violation while her admitted conduct in Violation #2 would qualify as a Grade B violation. Given Defendant's criminal history category of III (the category at the time of the conviction in this District) and a Grade B violation, *see* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade"), Defendant's Range, under the Revocation Table of Chapter 7, is eight to fourteen months.

The government argued for revocation with eleven months of imprisonment, and continuation of the current term of supervised release set to expire on February 23, 2024. In support of its recommended sentence, the government discussed Defendant's underlying offense and noted that, at the time of her plea, she admitted to both selling and importing controlled substances. Additionally, the government argued that Defendant's criminal history is somewhat aggravating and that there is a strong need to protect the public given her progression to using methamphetamine, a more dangerous drug. Her criminal history includes a prior drug trafficking conviction for selling Xanax, and she was on a form of conditional release from state custody at the time she was indicted for the underlying offense. The government also stated that Defendant's conduct in Violations #1 and #2 is especially troubling given her release from incarceration in February 2017 and a prior violation for use of Xanax for which no revocation action was initiated approximately one month later in March 2017. Further, the government discussed Defendant's propensity to be dishonest and her unwillingness to avail herself of supervision. She has lied about her drug use repeatedly since being released from incarceration, is not candid with the USPO, and refuses to realize the benefits of drug treatment options,

5

including the RDAP program, available to her. Finally, the government cited Defendant's statement that she was scared to be honest with the USPO after using methamphetamine and her acceptance of responsibility by stipulation as mitigating.

Defense counsel argued for a term of inpatient drug rehabilitation, to be followed by a period of home incarceration. Specifically, defense counsel asked the Court to continue the sentencing portion of the final revocation hearing until Defendant was able to obtain a bed at an approved treatment facility. Alternatively, defense counsel argued for an eight month period of incarceration with the condition that Defendant can petition for early release in order to participate in inpatient rehabilitation, to be followed by a period of home incarceration. In support of this recommended sentence, defense counsel argued that Defendant's personal history is mitigating and includes significant mental, physical and emotional abuse. She is a drug addict who traffics to feed her own drug habit, lacks the resources necessary to live a responsible lifestyle, and cannot provide for herself. Additionally, defense counsel stated that Defendant is attempting to deal with mental health issues through her drug use, and that she must avoid Clay County if she wants to be successful on supervised release. Defense counsel also noted that he believes Defendant was federally prosecuted on the underlying offense because she was unable to provide favorable information to the government in the related prosecution of her former boyfriend for murder. Finally, defense counsel stated that treatment would be a better option for Defendant than incarceration, and stated that she could likely obtain a bed at an approved facility within four to six weeks.

Defendant addressed the Court and apologized for her conduct in Violations #1 and #2. She explained that she did not believe the RDAP program was beneficial and stated that, in her opinion, it sets an addict up to fail. Additionally, she stated that she believes she was treated

6

unfairly in relation to the underlying offense and the related murder investigation, and asked for the Court's mercy. Finally, she stated that she is an addict who needs help and that she needs to avoid Clay County in the future.

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was involved in a dangerous drug trafficking conspiracy. She pled guilty to conspiracy to distribute oxycodone and received a necessary sentence to address her criminal behavior. Defendant's denial of her responsibility and involvement shows that she does not appreciate the gravity of her criminal conduct, drug addiction, and its implications.

The Court next considers Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public. Defendant has a tragic personal background that includes a significant history of abuse. This troubling history negatively affects her ability to make good decisions and is mitigating. Although Defendant suffers from mental health issues related to her history of abuse, she must learn to take responsibility for her actions. She must admit that she has a problem and be honest with the Court and the USPO if she wishes to overcome her addiction. Given Defendant's criminal history and conviction for conspiracy to distribute oxycodone, each time she uses a drug, she is committing a new federal felony. Accordingly, there is a strong need to deter criminal conduct and protect the public.

The Court must also consider the need to provide Defendant with education, training, and treatment. Defendant has had the benefit of outpatient treatment and was offered the chance to participate in the RDAP program while incarcerated, but declined. This shows that she is not committed to overcoming her addiction. She was unable to remain compliant with the conditions of her supervised release while participating in outpatient substance abuse treatment, and used Xanax. Although defense counsel argues that Defendant is a candidate for a substantial period of inpatient rehabilitation as an alternative to incarceration to be followed by home incarceration, the Court does not see enough effort at compliance or candor in Defendant's history to recommend drug treatment in lieu of imprisonment.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Defendant's breach of the Court's trust is significant in this case. She has violated the conditions of her supervised release twice in a short period of time since she was released from custody in February 2017. She first used Xanax and was shown leniency by the USPO, and she has now used methamphetamine, a drug that, according to her PSR, she does not have a history of abusing. The form of methamphetamine available now is more dangerous than ever, and trafficking of this substance is pervading the community and endangering the public. Additionally, Defendant is not significantly committed to overcoming her addiction as evidenced by her statement to the

8

Court and her refusal to participate in the RDAP program while incarcerated, or to comply with the terms of her outpatient treatment program. Accordingly, because treatment is not justified as an exception to mandatory revocation under 18 U.S.C. § 3583(g)(1), a significant period of incarceration is warranted.

A sentence of eleven months is in the middle of the Guidelines Range. The Court believes that eleven months of incarceration, and supervised release to expire on February 23, 2024, is adequate to address the Defendant's breach of the Court's trust, deter criminal conduct, and protect the public. Defendant has not taken responsibility for her actions or her addiction. She has repeatedly been deceptive and lied about her drug use. She must be honest with herself and the USPO and learn to respect the Court's authority and the conditions of her supervised release. For the reasons discussed above, the Court finds this penalty is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction does not carry a maximum term of supervised release due to the nature of the underlying offense. *See* 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(C). Accordingly, the Court will recommend that supervised release be re-imposed as a continuation of the original sentence of seven years of supervised release, so as to expire on February 23, 2024, with the sole modification that the condition allowing Defendant to petition for early termination after four years if she does not have any violations should be removed.

Based upon the foregoing, the Court **RECOMMENDS**:

1. Revocation with a term of eleven months of imprisonment; and

    2. Supervised release to expire on February 23, 2024, under the same conditions previously imposed except that the condition allowing for early termination should be removed.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Chief Judge Caldwell's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 24th day of July, 2017.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge