UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:13-CR-12-KKC-HAI |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| REVA S. HICKS, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, on referral (D.E. 56), considers reported violations of supervised release conditions by Defendant Reva Hicks. As a district judge, Judge Thapar entered a judgment against Defendant on January 29, 2014, for conspiracy to distribute oxycodone.[1] D.E. 33. She was sentenced to sixty-five months of imprisonment and seven years of supervised release, with the condition that she may petition the Court for early termination after four years if there were no violations. *Id.* at 2-3. On July 17, 2015, Defendant's sentence was reduced to fifty-two months pursuant to 18 U.S.C. § 3582(c)(2). D.E. 37. Defendant began her first term of supervised release on February 24, 2017.

On March 20, 2017, the United States Probation Office ("USPO") submitted Report on Offender Under Supervision, after Defendant used Xanax without a prescription, requesting that no action be taken at that time to allow her to obtain outpatient substance abuse counseling. D.E. 38. District Judge Thapar approved the requested action. *Id.*

---

[1] This matter was reassigned to Judge Caldwell on June 29, 2017. D.E. 39.

On September 1, 2017, Defendant's term of supervision was revoked due to the use and resulting possession of methamphetamine. Defendant was sentenced to eleven months of imprisonment to be followed by a term of supervised release to expire on February 23, 2024.

## I.

On June 17, 2022, the USPO issued the Supervised Release Revocation Report ("the Report") that initiated these proceedings. According to the Report,

> On June 3, 2022, the defendant submitted a urine specimen which was sent to Abbott for testing. On June 17, 2022, a Drug Test Report was received from Abbott, confirming a positive result for the use of methamphetamine and hydrocodone.

The Report charges two violations based on this conduct. Violation #1 alleges Defendant violated the condition that requires her to refrain from the unlawful use of a controlled substance. This is a Grade C violation. Violation #2 alleges Defendant violated the conditions that prohibit her from committing another federal, state, or local crime and from unlawfully possessing a controlled substance. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's methamphetamine and hydrocodone possession, on account of her prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

## II.

On June 24, 2022, the Court conducted an initial appearance pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure. D.E. 58. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of her right to a preliminary hearing. *Id.* At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required.

At the final hearing on July 7, 2022, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 59. Defendant waived a formal hearing and stipulated to the violations set forth in the Report. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). Defendant's stipulation permits the Court to find that he engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

During the final hearing, the parties jointly recommended fourteen months of imprisonment with no supervised release to follow. The government highlighted that this is Defendant's third set of violative conduct, which is an aggravating factor. As mitigating, the government noted that Defendant had a long period of compliance while she lived in Ohio. Given the similarity of the drugs involved, the government argued that Defendant's current violations are closely tethered to the underlying offense. The government also argued that none of the circumstances warrant an additional term of supervised release, as Defendant is not a dangerous offender and her relationship with the USPO has not been fruitful.

Defense counsel agreed with the government's statements. Counsel stated that the common denominator among Defendant's violations is her residing in Kentucky. Counsel also stated that Defendant did well on supervision and was employed while she lived in Ohio. Finally, defense counsel stated that Defendant's violations, based on her own statements, are isolated incidents that do not warrant treatment. Counsel concluded that an additional term of

3

supervision would result in a waste of resources. Defense counsel also requested that Defendant be placed at a facility closest to her daughters in Lexington, Kentucky.

Defendant directly addressed the Court and stated that the current violations resulted from her having no transportation to her job in Kentucky. Defendant apologized for her conduct.

Defendant's daughters were also present during the hearing. After the Court announced its recommendation, one of Defendant's daughters requested to address the Court. She indicated that Defendant suffered sexual abuse at a young age and gave birth to her at age fourteen. She requested that Defendant receive mental health treatment. The Court indicated that treatment options would be available while Defendant is in custody, but she will be responsible for seeking treatment after her term of imprisonment.

### III.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pled guilty to conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846, which is a Class C felony. *See* 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 3559(a)(3). For a Class C felony, the maximum revocation sentence provided under section 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment,

U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).

Under § 7B1.1, Defendant's admitted conduct in Violation #1 would qualify as a Grade C violation while her admitted conduct in Violation #2 would qualify as a Grade B violation. Given Defendant's criminal history category of III (the category at the time of the conviction in this District) and a Grade B violation, Defendant's Range under the Revocation Table of Chapter 7 is eight to fourteen months. U.S.S.G. § 7B1.4(a); *see also* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade"). Both parties agreed to this calculation of the range.

A Court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Defendant's original conviction carries no maximum term of supervised release. 21 U.S.C. § 841(b)(1)(C).

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant because she possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1). The sole exception to mandatory imprisonment and revocation provided in 18 U.S.C. § 3583(d) would require a finding that the record supports drug treatment as a suitable alternative to incarceration. *See* 18 U.S.C. § 3583(d); *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a

5

controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Defendant did not request or argue in favor of this exception, and nothing in the record supports its application.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

### IV.

The Court has evaluated the entire record, including the Report and its accompanying documents, and Defendant's underlying judgment and sentencing materials. Additionally, the Court has considered all of the section 3553 factors imported in the section 3583(e) analysis.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was involved in a dangerous drug trafficking conspiracy. She pled guilty to conspiracy to distribute oxycodone and received a necessary sentence to address her criminal behavior.

The Court next considers Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public. Defendant has a tragic personal background that includes a significant history of abuse. Although Defendant suffers from mental health issues related to her history of abuse, she must learn to take responsibility for her actions. Given the types of controlled substances involved, the current violations are tethered to Defendant's underlying conviction. Defendant's possession and use of controlled substances while on

supervised release promote drug trafficking and pose the risk of returning to criminal conduct, which is dangerous to the public. Accordingly, there is a strong need to deter criminal conduct and protect the public.

The Court must also consider the need to provide Defendant with education, training, and treatment. Defendant likely needs mental health and substance abuse treatment. However, Defendant has had the benefit of outpatient treatment and was offered the chance to participate in the RDAP program while previously incarcerated, but declined. She has repeatedly violated the terms of her supervision and has been dishonest about those violations. Further, defense counsel indicated that the violations are isolated incidents, which reflect poor judgment rather than a need for treatment. Thus, the Court cannot justify continuing to expend resources on an individual that refuses to comply with conditions.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Defendant's breach of the Court's trust is significant in this case. Defendant's first set of violative conduct was met with leniency from the Court. Despite her dishonesty and use of Xanax, the Court approved that no action be taken at that time. Shortly thereafter, Defendant violated the conditions of her supervision again by using methamphetamine. This is Defendant's third set of violative conduct,

7

which she was once again dishonest about with her probation officer. These circumstances make the present breach of trust particularly severe.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range. Here, the Court recommends a sentence of incarceration of fourteen months. For the reasons discussed above, the Court finds this penalty is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction does not carry a maximum term of supervised release due to the nature of the underlying offense. *See* 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(C). However, for the reasons stated above, the Court will recommend that no additional term of supervised release be imposed.

Based upon the foregoing, the Court **RECOMMENDS**:

1. That Defendant be found guilty of the violations;
2. Revocation with a term of fourteen months of imprisonment at a facility closest to Lexington, Kentucky; and
3. No supervised release to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **five days** after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for

8

consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Caldwell's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 8th day of July, 2022.

Signed By:
Hanly A. Ingram
United States Magistrate Judge

9